Bud D. WRIGHT and Joanne J. Wright, Plaintiffs-Appellants-Petitioners,

v.

Thomas COLEMAN and American Family Mutual Insurance Company, a Domestic Corporation, Defendants-Respondents.

Supreme Court

*No. 87–1094. Argued November 2, 1988.—Decided March 27, 1989.*

(Also reported in 436 N.W.2d 864.)

For the plaintiffs-appellants-petitioners there were briefs and oral argument by *John K. Brendel,* Brookfield.

For the defendants-respondents there was a brief by *James R. Sommers* and *Hunter, Sommers & Lavin,* Waukesha, and oral argument by *James R. Sommers.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a decision of the court of appeals which affirmed a judgment of the circuit court for Waukesha county, Harold J. Wollenzien, circuit judge, that dismissed the cause of action of Bud D. Wright, a city of Brookfield firefighter, and Joanne J. Wright (hereinafter Wright), following a jury verdict finding that the landowner Thomas Coleman was not negligent in respect to conditions which allegedly caused personal injuries to Wright.

Because we conclude that the jury was erroneously instructed, we reverse the decision of the court of appeals and remand to the circuit court for a new trial. We direct that the standard of care to which the landowner Coleman must conform is that of ordinary care under the circumstances—the same standard of care which all persons must exercise. *Antoniewicz v. Reszcznski,* 70 Wis. 2d 836, 236 N.W. 1 (1975).

On this review and on the appeal at the court of appeals level, the reviewing courts did not have the benefit of a transcript. Because the question, what jury instructions were appropriate, is fact based, it is apparent that the appellants initially ought to have supplied the transcript. However, as was technically his option under the rules, appellant Wright filed a statement that a transcript was not necessary for the appeal. Rule 809.11(4), Stats. Respondent Coleman responded by stating that a transcript was necessary but did not

move for the production of a transcript under rule 809.16(1) or order a transcript at his own expense, the cost of which could have been recoverable in the event of respondent's success on appeal. As Walther, Grove, and Heffernan, *Appellate Practice and Procedure in Wisconsin,* sec. 7-2 (1986), point out, "In most appeals, a complete or partial transcript will be necessary." Thus, we proceed, as did the court of appeals, to discuss evidentiary facts without the benefit of a transcript. We find it appropriate to do so under the circumstances set forth below.

■

Coleman on this appeal objects to the statement of facts appearing in Wright's brief and the facts asserted at oral argument, stating that almost all the material facts were contested. Counsel for Coleman at oral argument acknowledged, however, that there was some evidence of record from which a jury could conclude that the facts were as stated by Wright, although he asserted that the weight of the evidence was to the contrary. For the purpose of this review, therefore, we accept the resume of facts stated by Wright, for the factual predicate for jury instructions is simply whether there was evidence of record which the jury could, although it need not, believe. *Lutz v. Shelby Mut. Ins. Co.,* 70 Wis. 2d 743, 750, 235 N.W.2d 426 (1975). Thus, the facts, although disputed are acknowledged to be of record. The facts are those taken from Wright's brief and pose the legal question for which we accepted this review. That question is whether the only liability of a landowner to a firefighter is predicated on the "hidden hazard" standard referred to in *Clark v. Corby,* 75 Wis. 2d 292, 249 N.W.2d 567 (1977), or whether the duty of an owner or occupier of land is ordinary care under the circumstances, subject to the narrow exceptions to

liability set forth in *Hass v. Chicago & North Western Ry. Co.,* 48 Wis. 2d 321, 179 N.W.2d 885 (1970). As stated above, the appropriate standard is ordinary or reasonable care.

Bud Wright, the plaintiff and petitioner before this court, was employed as a firefighter by the city of Brookfield when, on January 8, 1983, at about three o'clock in the morning, he, with his fire company, responded to a report of a fire on the property of Thomas Coleman. The first officer at the scene was a police officer, who ordered Coleman, the landowner, into the house and away from the detached garage, where the fire was blazing. After Wright arrived at the scene, he was attempting to bring a hose line up to the garage when he fell on "glare ice" on the driveway. There were assertions at trial that this ice was the result of Coleman's son using a garden hose late in the preceding afternoon to wash a car. There was some evidence that, on the particular evening, there was no ice anywhere else in the city of Brookfield—only this artificially created icy area. It is asserted that Wright so severely injured his knee that he was obliged to retire as a firefighter.

While it is asserted that the "facts" recited above were controverted, nevertheless the court implicitly found there was some support for those facts, because it instructed on both the negligence of the plaintiff Wright and the negligence of defendant-landowner Coleman.

Wright asked for an instruction that would have told the jury no liability was incurred by a homeowner for negligence in starting a fire or for negligence in failing to curb its spread, but "an owner or occupier for all other purposes owes the firefighter the same duty of reasonable care as such owner/occupier would owe to

any other person, except a trespasser. A firefighter ... is not a trespasser ...."

He further asked for an instruction explaining that "[a] possessor of premises does, however, have the duty to exercise ordinary care under all of the existing circumstances to maintain his premises so as to avoid exposing persons on his premises with his consent to an unreasonable risk of harm."

Judge Wollenzien gave these instructions in substantially the same form as requested by the plaintiff. Somewhat similar instructions were also submitted by defendant Coleman.

The defendant, however, asked for a special instruction based on *Clark v. Corby, supra.* Over the objection of plaintiff Wright, that instruction was given. It provided:

> The negligence referred to is based upon the duty of property owners or occupiers to warn a firefighter of hidden hazards known to the owner or occupier but not known to the firefighter. In order for the owner or occupier to be negligent, four factors must co-exist:
>
> (1) A hidden hazard exists on the property—a concealed danger that foreseeably created an unreasonable risk to others; and
> (2) Which hidden hazard is known to the property owner or occupier; and
> (3) Which hidden hazard is not known and not observable by the firefighter; and
> (4) There existed a clear opportunity for the property owner or occupier to give a warning of the hidden hazard.
>
> Only if you find all four facts to co-exist can you find the Defendant Thomas Coleman negligent.

■We conclude that this latter instruction was erroneous. The ordinary negligence instructions were appropriate and should have been given. The error was in that portion of the above instruction which limited the negligence of the landowner to only that which defined hidden hazards.[1]

To put this case in perspective, we briefly review the earlier Wisconsin cases which are instructive in respect to the case before us.

The first case of direct relevance is *Hass v. Chicago & North Western Ry Co.,* 48 Wis. 2d 321, 179 N.W.2d 885 (1970). Therein, this court adopted the "fireman's rule" as a policy exception to liability of a landowner for negligence causing injury to a firefighter. We stated that the duty of a landowner is simply that of reasonable care in respect to a firefighter who comes upon his property to fight a fire. We treated that negligence in the same way as any negligence in respect to one who comes upon the land by invitation. Hence, in the ordinary course of duty, breach, injury, and proximate cause analysis, we would have imposed liability upon a landowner for negligence in starting a fire or properly failing to curtail its spread—except for public policy factors that are incorporated in the concept of proximate cause. We said:

> It is obvious that starting a fire under the circumstances alleged is negligence irrespective of who is eventually injured thereby.

---

[1]We find no error in the recitals or the description of the negligence contained in the objected-to instructions. No doubt, they describe factors that would tend to show a lack of reasonable care. They do not, however, embrace the totality of lack of ordinary care referred to in the general negligence instruction, which a jury can look to and thus inappropriately limit the jury's consideration.

To impose liability it must also be determined that the negligence was a "substantial factor" in causing the injury. *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 237, 55 N.W.2d 29. The plaintiff has pleaded the negligence of the railroad and that it is a "substantial factor" in causing the injuries. These are factual allegations that must be treated as verities on demurrer. However, negligence plus an unbroken sequence of events establishing cause-in-fact does not necessarily lead to a determination that the defendant is liable for the plaintiff's injuries. The determination to not impose liability in instances where a negligent act has been committed and the act is a "substantial factor" in causing the injury rests upon considerations of public policy.

In *Colla v. Mandella* (1957), 1 Wis. 2d 594, 598, 599, 85 N.W.2d 345, we said:

> 'It is recognized by this and other courts that even where the chain of causation is complete and direct, recovery against the negligent tort-feasor may sometimes be denied on grounds of public policy because the injury is too remote from the negligence or too "wholly out of proportion to the culpability of the negligent tort-feasor," or in retrospect it appears too highly extraordinary that the negligence should have brought about the harm, or because allowance of recovery would place too unreasonable a burden upon users of the highway, or be too likely to open the way for fraudulent claims, or would "enter a field that has no sensible or just stopping point."'

*Hass v. Chicago & North Western Ry. Co.,* 48 Wis. 2d at 326.

We concluded, where the negligence of the landowner was only "in starting a fire and failing to curtail its spread" (at 327), as a matter of judicial public policy there should be no liability to a firefighter—this despite there being an unbroken chain of negligence and cause in fact arising out of a failure to exercise ordinary or reasonable care in the circumstances.

Other jurisdictions have reached a similar conclusion under the so-called "fireman's rule," which, in some jurisdictions, is based upon a theory of assumption of risk—a doctrine which is no longer recognized as *per se* a bar to liability in our negligence jurisprudence, although elements of what was once denominated as assumption of risk are components of contributory negligence, which, on a comparative basis, may reduce or even eliminate the possibility of recovery.

This court, under the facts of *Hass,* as a matter of policy reached a result consistent with the "fireman's rule," a rule that does not favor firefighters, but favors owners and occupiers of property.

We, however, pointed out therein that we were not foreclosing firefighters from ever recovering against a landowner for acts of negligence different from those we found insulated on policy grounds in *Hass.*

Acts of negligence different from those in *Hass* were considered in *Clark v. Corby,* 75 Wis. 2d 292, 249 N.W.2d 567 (1977). Writing for the court, Justice Robert W. Hansen posed the issue thus:

> What was not before the court in *Hass* is before us now. Is there a duty on the part of a landowner or occupier to warn a firefighter "of special hazards known to him but unknown to the firefighter?"

75 Wis. 2d at 296.

Then, in a single page, at 297, the opinion went on to use, with apparent interchangeable meaning, the terms, "special hazards," "hidden hazards," and "unusual hazards." Because of this interchangeability of these words, we conclude that "hidden hazard," the applicable and most appropriate term under the facts of *Corby,* was not intended to be a limiting word of art which alone would trigger liability, but rather was descriptive under the facts of that case of a hazard known to the landowner (and unknown to the firefighter) which, in the exercise of reasonable care under the circumstances, should have occasioned a warning by the landowner to the firefighter who came on the premises.[2]

We see *Corby* not as a special rule applicable only for hazards that were "hidden" but a case of inapplicability of the policy immunity recognized in *Hass*—*Corby* being a case in which it was not appropriate to curtail or limit the consequences of the owner's negligence as a matter of policy. In *Corby,* the court

[2]The facts stated in *Corby* in the opinion are limited indeed—the case was taken on demurrer—limited to the allegation of the complaint that the conditions in the basement constituted "'a trap and a snare as to fire fighter Gene Clark and were hidden dangers.'" 75 Wis. 2d at 296.

A reference to the brief of respondent indicates that what was hidden was described in this way:

> Nor was he warned that the origin of the fire was gasoline and that fumes from such gasoline were backing up from the sewer where the gas had been poured, creating the exact conditions necessary for an explosion which later occurred and caused his injuries.

What was "hidden" in *Corby* was the unusual nature of the hazard, *i.e.,* gasoline fumes that would create special hazards above and beyond negligence in starting the fire and the fire itself.

acknowledged that public policy was involved. 75 Wis. 2d at 298. But public policy factors in respect to the hazards in *Corby* did not require the court to insulate the landowner when the facts might demonstrate there was an opportunity to warn the firefighter of hazard. Thus, the fundamental analysis in *Corby* was precisely the same as in *Hass;* but, as a matter of policy, the consequences of an unbroken sequence of negligence and cause were allowed to operate in a normal way to permit liability.

Moreover, *Corby* is completely consistent with *Antoniewicz v. Reszcznski,* 70 Wis. 2d 836, 236 N.W.2d 1 (1975), decided before *Corby,* but not made effective until after the injuries sustained by the plaintiff in *Corby.* Justice Hansen, in footnote 6, page 297, referring to the non-applicability of *Antoniewicz* because only at a later date was it to be effective to all cases, said:

> [T]he duty to warn of *unusual hazards in a case such as the present one* would then be an element of ordinary negligence. Notwithstanding the above, the result we reach in the instant case would be the same before or after the *Antoniewicz* effective date. (Emphasis supplied.)

This footnote is significant for two reasons. One, in referring to the hazard in *Corby* as "unusual," it is again made clear that "hidden" is not a word of art but is merely descriptive of a hazard of which a person should be warned in the circumstances. In addition, the footnote makes clear that the application of the duty to warn of a hazard applicable in *Corby* is merely an element of ordinary care that, under *Antoniewicz,* was to be generally applicable to all owner/occupier cases except those involving trespassers. The holding in *Corby,* in effect, merely applied in that particular case

the rules of ordinary care which are required after the effective date of *Antoniewicz* to be applicable in all cases.

Thus, this court has decided as a matter of policy that, where the landowner's or occupier's negligence is in starting a fire or in failing to curtail its spread, there is no liability to a firefighter. *Hass, supra.* We have also decided in *Corby* that, if there is a hazard—a hazard that was known to the landowner but unknown to the firefighter, it is negligence to fail to warn if, under the circumstances, it would be reasonable to warn. In *Corby,* in the event of such negligence, we did not conclude, under the facts there, that as a matter of policy liability should be limited.

It is apparent that the general rule is that stated in *Corby* and *Antoniewicz.* The exception is *Hass,* where we have held, as a matter of policy, that a firefighter may not recover from a landowner or occupier who has been negligent only in starting or failing to curtail the fire. This is Wisconsin's version of the fireman's rule.

To return to the facts of the case before us. Wright claims there is liability because of the ice on the driveway and the failure to warn of that hazard. If there is liability, however, it would only be as the result of facts found by the jury and the application to those facts of the rules of ordinary negligence under proper instructions. Did the landowner exercise reasonable care under the circumstances? This is a jury question. What is reasonable care under the circumstances concerns the usual gamut of concerns. Did the landowner know of the ice accumulation or ought he to have known. Assuming that he knew or ought to have known, was it reasonable under the circumstances for Coleman not to have given warning to the firefighters, bearing in mind that as we see the facts now—which may be

proved incorrect at a new trial—Coleman was told by the policeman to go in the house and may have had no opportunity to warn anyone. On the other hand, was the ice so visible—it was described as "glare ice"—that Wright was contributorily negligent in failing to avoid or to take reasonable precautions in view of a visible hazard, *i.e.,* in failing to exercise ordinary care for his own safety.

At oral argument numerous "bizarre" hazards were hypothesized as being of a type that might or might not be hazardous and require warnings. Under applicable principles, we can only state that the law of negligence cannot, except in rare and unusual cases, predict, as a matter of law, what will be negligent conduct. We do not mean by this opinion that a homeowner must clean up and prepare his home for an emergency, but rather normal living conditions must be considered by the jury as one of the circumstances of the reasonable care used by a homeowner. The question is one for the jury: What care is required under the particular circumstances? It is only in the unusual or very clear case that a court can conclude, as we did in *Hass,* that, despite negligent conduct, as a matter of law, *i.e.,* under appropriate policy, there shall be no recovery. Whether any policy factors are relevant to limit liability is a question for the court in the particular case, a question that in most cases will never arise. *See Hass,* 48 Wis. 2d at 326, for an itemization of policy factors as elements of proximate cause.

We conclude that the instructions given were, with a fatal exception, correct. The instructions in regard to ordinary negligence and contributory negligence are not exceptionable, and as we read the record, there was no exception taken to them.

It was, however, erroneous to interpret *Clark v. Corby* as limiting the duty of a landowner to warn only of "hidden" hazards. The duty is broader, and a reasonable reading of *Corby* in its entirety demonstrates that possible landowner negligence was not to be limited in all cases to "hidden" hazards. It is simply a duty to warn where the landowner knows of a hazard and fails to do so, when a reasonable person in the circumstances would have done so. The only magic of the word, "hidden," is that, if the hazard is unobservable or undetectable in the exercise of due care by one who comes on the premises, that person would no doubt be absolved of any contributory negligence. And, of course, liability could be predicated on any conduct that could be held to demonstrate lack of ordinary care in the circumstances.

We remand the case for further proceedings and direct that it be tried under the standards of *Antoniewicz v. Reszcznski*, bearing in mind that the policy determination made in *Hass* excepting liability to firefighters in specified circumstances remains as an exception to the general rules of liability.[3]

*By the Court.* Decision reversed and cause remanded.

---

[3]*Hass* is, of course, irrelevant to the factual posture of the case as it appears to us now, for the negligence at issue has nothing to do with either starting the fire or failing to curtail its spread. That is all *Hass* stands for.