Jeanne M. SUTTON, by her guardian, Jeffrey S. Sutton, Jeffrey S. Sutton, Chayce Sutton, by his Guardian ad Litem, Eugene A. Gasiorkiewicz, and Carly Sutton, by her Guardian ad Litem, Eugene A. Gasiorkiewicz, Plaintiffs-Appellants,†

v.

Olli KAARAKKA, M.D., and Wisconsin Patients Compensation Fund, Defendants,

LIBERTY MUTUAL INSURANCE COMPANY and In-Sink-Erator, Inc., Intervening-Parties-Respondents.

Court of Appeals

*No. 91-1557. Submitted on briefs January 24, 1992.—Decided March 11, 1992.*

(Also reported in 483 N.W.2d 259.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Alice A. Nejedlo* and *Eugene A. Gasiorkiewicz,* of *Hanson, Gasiorkiewicz & Weber, S.C.* of Racine.

On behalf of the intervening-party-respondent, *Liberty Mutual Insurance Company,* the cause was submitted on the brief of *Paul R. Riegel* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

On behalf of the intervening-party-respondent, *In-Sink-Erator, Inc.,* the cause was submitted on the brief of *Daniel J. Kelley* of *Schoone, Ware, Fortune & Lueck, S.C.* of Racine.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J.   Pursuant to sec. 102.29(1), Stats., of the Worker's Compensation Act, the trial court approved a medical malpractice settlement in favor of Jeanne M. Sutton. The court, however, reserved a portion of the settlement to guarantee payment of future worker's compensation obligations. Sutton, the employee, appeals the trial court's ruling that the interest earned by this reserved account is to be retained by the fund rather than paid directly over to her. We affirm the trial court's ruling.

This case makes its second appearance in the court of appeals. In *Sutton v. Kaarakka,* 159 Wis. 2d 83, 464 N.W.2d 29 (Ct. App. 1990) *(Sutton I),* this court held that the employer, In-Sink-Erator, Inc., and its worker's compensation insurance carrier, Liberty Mutual Insurance Company (collectively, the employer), were entitled to participate in the settlement structure pursuant to sec. 102.29(1), Stats. *See Sutton I,* 159 Wis. 2d at 87, 464 N.W.2d at 31.[1]

---

[1] The specific issue in *Sutton v. Kaarakka,* 159 Wis. 2d 83, 464 N.W.2d 29 (Ct. App. 1990), was whether a recent amendment to sec. 102.29, Stats., which permitted employer participation in a settlement with a third-party tortfeasor applied where the statutory amendment occurred after the work-related injury but before the malpractice. The court of appeals concluded that since the act

The facts are undisputed. We take them from *Sutton I.* In the fall of 1987, Sutton suffered a work-related injury to her shoulder. Treatment failed to relieve her condition and she agreed to stabilization surgery. On May 11, 1988, during the anesthetic induction just prior to the surgery, Sutton experienced cardiac arrest and, as a result, suffered oxygen deprivation to the brain. Sutton was comatose for several months. Although she regained consciousness, she was left with profound cognitive-motor deficits. She filed a medical malpractice action against the anesthesiologist. Eventually, the parties reached a settlement in the amount of $4,000,000. *Id.* at 85, 464 N.W.2d at 30.

In approving the settlement and distributing the proceeds, the trial court followed sec. 102.29(1), Stats., which provides in relevant part:

> After deducting the reasonable cost of collection, one-third of the remainder shall in any event be paid to the injured employe . . .. *Out of the balance remaining, the employer, insurance carrier . . . shall be reimbursed for all payments made by it, or which it may be obligated to make in the future, under this chapter . . ..* Any balance remaining shall be paid to the employe . . .. [Emphasis added.]

Pursuant to this statutory scheme, the trial court deducted the reasonable cost of collection and one-third of the remainder which was paid to Sutton.[2] The employer then laid claim to the balance of the settlement pursuant to the statutory language we have highlighted

of malpractice constituted a separate cause of action, the amendment permitted the employer to participate in the settlement. *Id.* at 87, 464 N.W.2d at 31.

[2]Before employing the statute, the trial court allocated a portion of the settlement to the claims of Sutton's husband and children.

above. The trial court denied this request but "froze" the balance pending appellate resolution of the issue. The end result was our ruling in *Sutton I* permitting the employer to participate in the settlement. We remanded for further proceedings consistent with our opinion. *Sutton I,* 159 Wis. 2d at 90, 464 N.W.2d at 33.

On remand, without objection from Sutton, the trial court directed that the employer be reimbursed for those worker's compensation payments it had made since the court "froze" the balance of the settlement pending our decision in *Sutton I*.[3] Nor did Sutton dispute that the employer was entitled to reimbursement for those worker's compensation payments it is obligated to make in the future. Therefore, again without objection, the court directed that the balance of the settlement ($1,001,416.60) be paid into "interest-bearing restrictive accounts" to be administered by a trust company. The parties refer to these accounts as a "cushion" fund.

Sutton then requested that the interest earned by this "cushion" fund be paid directly to her. The trial court denied this request, ruling that the interest was to be credited back to, and retained by, the fund. The parties' briefs represent that the employer's worker's compensation obligations to Sutton are in the amount of $348 per week for disability payments and $200 per day for medical expenses: a total annual liability in excess of $91,000. Sutton's brief represents that as of July 1991, the "cushion" account had earned interest in excess of $100,000.[4]

---

[3]The Wisconsin Supreme Court denied Sutton's petition for review in *Sutton I.*

[4]The parties have not provided us record cites as to these figures. However, since the parties do not dispute these figures, we accept them.

We conclude that this issue is governed by the Wisconsin Supreme Court's decision in *Hauboldt v. Union Carbide Corp.*, 160 Wis. 2d 662, 467 N.W.2d 508 (1991). There, although it was one of the lesser issues in the case, the supreme court rejected the employee's argument that sec. 102.29, Stats. (1987–88), "only allows employers a right to reimbursement for monies paid . . . as compensation benefits, and does not provide for interest on those benefits." *Id.* at 667, 467 N.W.2d at 509.

We acknowledge that the issue in *Hauboldt* arose in a different context than here. In *Hauboldt,* the employee's claim against the tortfeasor went to trial. The jury returned a favorable verdict for the employee, and the employer's compensation insurance carrier then made a claim against a portion of the award, together with interest, pursuant to sec. 102.29(1), Stats. The supreme court held, albeit in a somewhat terse analysis, "that the circuit court did not err when it awarded 12 percent interest to Employers on the amount due Employers as reimbursement under sec. 102.29(1), Stats. Employers was a party to the action and entitled to . . . interest since it was deprived of the use of its money." *Id.* at 687–88, 467 N.W.2d at 518.

We are not persuaded that the different procedural setting by which the interest dispute arose in *Haubolt* negates the application of the rule in this case. The fact remains that the supreme court held that sec. 102.29(1), Stats., envisions the payment of interest on money targeted for reimbursement to an employer who is obligated to its employee for future worker's compensation benefits.

Even though *Hauboldt* governs the issue, we nonetheless construe sec. 102.29(1), Stats., to demonstrate why the supreme court's holding was correct. We first

acknowledge that the statute does not expressly address interest earned on a "cushion" fund. We also acknowledge that legislative silence can sometimes create ambiguity. *See Hauboldt,* 160 Wis. 2d at 684, 467 N.W.2d at 516–17. Here, however, both the employer and Sutton agree that the statute is clear and unambiguous, although they offer differing interpretations.[5] We agree that the statute is unambiguous. We conclude that the interest earned by the "cushion" fund constitutes part of the fund.

It is clear that the purpose of a "cushion" fund under sec. 102.29(1), Stats., is to *reimburse* the employer: "Out of the balance remaining, the employer . . . shall be *reimbursed . . . .*" (Emphasis added.) It is also clear from the "laddered" payment scheme of sec. 102.29(1) that the employee is not entitled to the final remainder of the fund until the employer has been reimbursed for its payments—past and future. Then, and only then, shall the balance be paid to the employee or the employee's personal representative: "Any balance remaining shall be paid to the employe or the employe's personal representative . . . ." Thus, an employee has no direct or immediate claim to a "cushion" fund.

It is axiomatic that moneys held in such a "cushion" account will earn interest. We see nothing in the statutory scheme of sec. 102.29(1), Stats., which suggests bifurcation of the fund's principal and interest in the manner Sutton urges. To the contrary, we see the principal and interest as a unitary fund, existing to serve the purpose of the statute—reimbursement to the employer

---

[5]The other respondent, Liberty Mutual Insurance Company, does not expressly state whether it believes the statute to be ambiguous or unambiguous. However, it shares the employer's interpretation of the statute.

for those worker's compensation payments the employer has made in the past or must make in the future.

We recognize the general rule of statutory construction which holds that the Worker's Compensation Act is to be liberally construed to accomplish the act's overall objectives of protecting injured employees and those who depend on such employees for support. *Larson v. DILHR*, 76 Wis. 2d 595, 615, 252 N.W.2d 33, 42 (1977). However, this rule does not permit us to repeal or change a statute with obvious meaning. *Id.* at 615, 252 N.W.2d at 43.

We conclude that the clear meaning, scheme and purpose of sec. 102.29(1), Stats., is to allow reimbursement to an employer for its past and future worker's compensation payments from a portion of the moneys paid by a third-party tortfeasor to the employee. We think it equally clear that, in the absence of a legislative statement to the contrary, the interest earned by such a "cushion" fund must be applied to the same statutory end.[6]

*By the Court.*—Order affirmed.

---

[6]Sutton relies on a decision of the New Hampshire Supreme Court, *Lakin v. Daniel Marr & Son Co.*, 495 A.2d 1299 (N.H. 1985). *Lakin*, however, is contrary to *Hauboldt* and our analysis of sec. 102.29(1), Stats.