Shirley KRAUSE, etc., et al.,
Appellants,

v.

U.S. TRUCK COMPANY, INC., et
al., Respondents,

and

Darryl A. James, Defendant,

and

American Family Mutual Insurance
Co., Intervenor–Defendant.

No. 72119.

Supreme Court of Missouri,
En Banc.

March 13, 1990.

Rehearing Denied April 17, 1990.

Gary R. Bradley, Robert L. Langdon, N.R. Bradley, Lexington, for appellants.

Sylvester James, Sr., Robert A. Horn, James P. Barton, W. James Foland, Joseph J. Roper, Thomas A. Sheehan, Paul Hasty, Jr., Bradley S. Russell, Kansas City, for respondents.

John B. Reddoch, Scott J. Sullivan, Liberty, for intervenor-defendant.

HOLSTEIN, Judge.

Plaintiffs are the surviving widow and children of Dennis Krause. Krause died after being struck by a vehicle on Interstate 70 in Lafayette County on January 18, 1988. Plaintiffs brought a wrongful death action against six defendants. Defendant Darryl James was uninsured, and American Family Mutual Insurance Company was permitted to intervene and defend as an uninsured motorist insurer. Summary judgment was entered in favor of all defendants except James and American Family. The trial court, pursuant to Rule 74.01,[1] designated the judgment final for purposes of appeal. Plaintiffs appealed to the Missouri Court of Appeals, Western District. Transfer was granted to this Court pursuant to Rule 83.03.

A summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits filed in support of the motion, show there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law. Rule 74.04(c). The facts are viewed in a light most favorable to plaintiffs. *Tatum v. General Motors Acceptance Corp.*, 732 S.W.2d 591, 592 (Mo.App.1987). None of the parties dispute the accuracy of the trial court's factual findings.

In the early morning hours of January 18, 1988, a series of vehicle collisions occurred in the eastbound lanes of Interstate 70 near Emma, Missouri. Visibility was poor due to dense fog, and moisture had frozen on the pavement. Stanley Smith, an employee of U.S. Truck Company, Inc., lost control of his truck. The truck came to rest with the trailer partially blocking the highway. Immediately thereafter, vehicles operated by Jammie Bell and William Kruger collided with Smith's trailer or each other. At that point, the two eastbound lanes of the highway were blocked. In rapid succession Ernest Letterman's vehicle collided with the Kruger vehicle, and Ralph Mettlar's vehicle collided with Letterman's vehicle. The various collisions resulted in injuries.

The Concordia Fire District received word of the collisions a few minutes later. The fire district is manned by two part-time employees and twenty-seven "volunteer" members trained as firemen and ambulance attendants. The term "volunteer" is somewhat of a misnomer because those who respond to a call are paid an hourly wage; however, when summoned to an emergency, members have no obligation to respond.

---

1. All references to rules are to Missouri Rules of Court, 21st edition (1990).

Dennis Krause was a member of the fire district and had training in advanced first aid. His only duties for the fire district were those of an ambulance attendant. Decedent's regular occupation was as a service station operator and mechanic.

On January 18, 1988, Krause chose to answer when summoned. Following standard procedures, he reported to the firehouse. Krause and two other attendants then proceeded to the scene of the accident, arriving fifteen to twenty minutes after the Mettlar vehicle collided with Letterman's vehicle. Firemen who arrived before Krause were attempting to control traffic. Both lanes of eastbound Interstate 70 remained blocked.

Krause and another ambulance attendant, Arch Wood, began efforts to attend the injured. Krause was leaning through the window of the Kruger vehicle. Defendant Darryl James, approaching from the west, apparently did not respond to a fireman who attempted to give a warning. Krause was struck and killed by the James vehicle. The incident occurred about thirty seconds after Krause arrived on the scene.

The trial court, in granting summary judgment, found that the negligence of U.S. Truck, Bell, Kruger, Letterman and Mettlar (hereafter defendants), was not the proximate cause of Krause's death, and that the "rescue doctrine" was not applicable in this case because of the "fireman's rule."

### I.

■ In any action for negligence, the plaintiff must establish the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty and, that plaintiff's injury was proximately caused by defendant's failure. *Virginia D. v. Madesco Inv. Corp.*, 648 S.W.2d 881, 886 (Mo. banc 1983); *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976); *Consumers Co-op Ass'n. v. McMahan*, 393 S.W.2d 552, 555 (Mo.1965). The duty owed is generally measured by whether or not a reasonably prudent person would have anticipated danger and provided against it. *Hoover's*

*Dairy, Inc. v. Mid–America Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985); *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253 (1928). No duty is owed to persons outside "the orbit of the danger as disclosed to the eye of reasonable vigilance." *Palsgraf,* 162 N.E. at 100.

■ Foreseeability also plays a prominent role in determining proximate cause. If two or more persons are guilty of consecutive acts of negligence closely related in time, there is a question as to whether the initial act of negligence was the proximate cause of the injury or whether there was an "efficient, intervening cause." *Strake v. R.J. Reynolds Tobacco Co.*, 539 S.W.2d 715, 718 (Mo.App.1976). The practical test of proximate cause is generally considered to be whether the negligence of the defendant is that cause or act of which the injury was the natural and probable consequence. *Id. Dickerson v. St. Louis Public Service Co.*, 365 Mo. 738, 286 S.W.2d 820, 824 (banc 1956), adds, "Thus, from the essential meaning of proximate cause arises the principle that in order for an act to constitute the proximate cause of an injury, *some* injury, if not the precise one in question, must have been reasonably foreseeable." The cases discussing proximate cause contain the exasperating caveat that in deciding questions of proximate cause and efficient, intervening cause, each case must be decided on its own facts, and it is seldom that one decision controls another. *Duke v. Missouri Pac. R. Co.*, 303 S.W.2d 613, 618 (Mo.1957); *Dickerson*, 286 S.W.2d at 824; *Smith v. Secrist*, 590 S.W.2d 386, 389 (Mo.App.1979); *Strake*, 539 S.W.2d at 718. Identifying those within the range of foreseeability who may be injured by an act of negligence is somewhat an exercise in subjectivity.

### II.

■ The "rescue doctrine" is an attempt to find a bright line rule. The rescue doctrine is legal shorthand for a particular factual situation in which courts find the foreseeability requirement is satisfied. In those factual circumstances where one

is injured while attempting a rescue, the negligence creating the peril requiring rescue is held to be the proximate cause of the rescuer's injury. More succinctly, danger invites rescue, and the wrong that imperils the victim is a wrong to the rescuer. *Wagner v. International Ry. Co.*, 232 N.Y. 176, 133 N.E. 437, 19 A.L.R. 1 (1921). "A person with reasonable foresight who negligently imperils another or who negligently imperils himself will normally contemplate the probability of an attempted rescue, in the course of which the rescuer may sustain injury." *Lowrey v. Horvath*, 689 S.W.2d 625, 628 (Mo. banc 1985).

### III.

■ The crucial question remaining is whether the "firemen's rule" prohibits plaintiffs' recovery. The rule provides that a fireman brought in contact with an emergency situation solely by reason of his status as a fireman who is injured while performing fireman's duties may not recover against the person whose ordinary negligence created the emergency. *Phillips v. Hallmark Cards, Inc.*, 722 S.W.2d 86, 87 (Mo. banc 1986); *Nastasio v. Cinnamon*, 295 S.W.2d 117, 121 (Mo.1956). The rule excludes firemen from the benefit of the rescue doctrine in most cases.

Unlike the *Phillips* case, the question for decision here is not whether to abrogate the fireman's rule, but whether the fireman's rule is to be extended to an ambulance attendant. The observant reader will have noted that Krause was not trained or employed as a fireman or policeman. He was an ambulance attendant. Section 190.-100(3), RSMo (Supp.1988), defines an ambulance attendant as: "[A] trained and qualified individual *responsible for the operation of an ambulance and the care of the patients transported thereby* whether or not the attendant also serves as driver." (Emphasis added.) To be a licensed ambulance attendant one must have completed an advanced first aid course, as well as meeting age, literacy, health and character requirements. § 190.145.2, RSMo 1986.

No Missouri case has applied the fireman's rule to ambulance attendants. De-

fendants argue that the rule applies to all persons who are "professional rescuers." They would include within that class anyone having public duties that may take them to the scene of an emergency. The plaintiffs argue that the fireman's rule should only apply to firemen, and only when firemen are performing their duties on the premises of another person. Neither extreme is supported by the case law.

■ The fireman's rule is a misnomer. It has been applied to police officers injured while involved in effecting an arrest. *Berko v. Freda*, 93 N.J. 81, 459 A.2d 663 (1983). The rule has also been extended to police officers injured while engaged in traffic control at the scene of an accident. *Wietecha v. Peoronard*, 102 N.J. 591, 510 A.2d 19 (1986). However, the reasons for the rule's application to firemen and police officers does not apply to all public employees whose duties may take them to the scene of an emergency.

An extensive analysis of the rationale behind the fireman's rule is found in *Flowers v. Sting Security, Inc.*, 62 Md.App. 116, 488 A.2d 523 (1985), *cert. granted*, 303 Md. 418, 494 A.2d 211 (1985), and in *Kreski v. Modern Wholesale Electric Supply Co.*, 429 Mich. 347, 415 N.W.2d 178 (1987). In the early cases involving firefighters, the courts analyzed the issue of liability on the basis of the traditional status categories of entrance upon the property of another—invitee, licensee, or trespasser. *Kreski*, 415 N.W.2d at 183; *Flowers*, 488 A.2d at 528. *See also, Nastasio v. Cinnamon*, 295 S.W.2d at 121. However, public safety officers do not precisely fit within the status of invitee and licensee. Because of inherent limitations on accurately fitting firemen into traditional concepts of landowner liability, courts have looked elsewhere for a rationale for the fireman's rule. *Kreski*, 415 N.W.2d at 183; *Flowers*, 488 A.2d at 531.

■ The emerging rationalizations for the fireman's rule emphasize assumption of the risk and considerations of public policy. *Phillips*, 722 S.W.2d at 88. Assumption of the risk as used in this context means "primary" assumption of the risk as con-

trasted to "secondary" assumption of the risk. *Flowers,* 488 A.2d at 533. " 'The ... rule ... can be rephrased as follows: A fireman assumes, in the primary sense, all risks incident to his firefighting activities except for hidden risks which are known by the landowner.' " *Kreski,* 415 N.W.2d at 186, *quoting Armstrong v. Mailand,* 284 N.W.2d 343, 349, 11 A.L.R.4th 583 (Minn. 1979). Primary assumption of the risk is not really an affirmative defense; rather, it indicates that the defendant did not even owe the plaintiff any duty of care. *Armstrong v. Mailand,* 284 N.W.2d at 348.

Not all courts rely exclusively on primary assumption of the risk as a rationale for adoption of the fireman's rule. Primary assumption of the risk is generally relied on to defeat an employee's claim against an employer where an employee was injured while undertaking duties that had a peculiarly hazardous character known to the employee. 56 C.J.S. *Master and Servant,* § 372, p. 1175 (1948). There are difficulties involved in finding an implied employment relationship between the defendant-taxpayer and plaintiff-fireman necessary to justify the primary assumption of the risk theory. *Kreski,* 415 N.W.2d at 186.

As previously noted, intertwined with the assumption of the risk rationale is the public policy rationale. That reasoning is also fully articulated in *Flowers* and *Kreski.* Firemen and police officers generally cannot recover for injuries attributable to the negligence that required their assistance because the relation between those persons and the public specifically calls them to confront certain hazards on behalf of the public. *Kreski,* 415 N.W.2d at 187. Firemen and policemen are hired, trained and compensated to deal with dangerous, but inevitable, situations. *Id.* Situations requiring the presence of firefighters and police officers are predictable, but their appearance at a specific time and place is not. *Kreski,* 415 N.W.2d at 187–188; *Flowers,* 488 A.2d at 529. The party whose negligence created the hazard has no right or duty to control police or firemen in the exercise of their functions. Thus, it is unreasonable to burden landowners or others to require them to prepare themselves or their property for the arrival of police officers or firefighters. *Kreski,* 415 N.W.2d at 188; *Flowers,* 488 A.2d at 529. The public, of which the defendant is a member, has provided, through workers' compensation laws, benefits available to police officers and firemen which fairly spread the costs of injuries to the public as a whole rather than imposing the burden upon individuals. *Kreski,* 415 N.W.2d at 189; *Flowers,* 488 A.2d at 536. The most persuasive and most nearly universal rationale for the fireman's rule is public policy.

There are two cases involving claims made by emergency medical personnel for injuries sustained after arrival at the scene of a rescue. In *Siligato v. Hiles,* 236 N.J. Super. 64, 563 A.2d 1172 (1989), the plaintiff was a volunteer member of an "emergency rescue squad" who responded to a call not knowing his son was the victim of asphyxiation induced by the negligence of a baby sitter. *Siligato,* 563 A.2d at 1173. When the plaintiff arrived, he found his son not breathing. *Id.* He was unsuccessful in his attempts to revive the child. *Id.* The father brought a wrongful death action against the baby sitter for the death of his son. *Id.* In another count the father sought damages for negligent infliction of emotional distress sustained by the father during his unsuccessful attempt to resuscitate the child. *Id.* The court reasoned that because the plaintiff had assumed the risk and was entitled to recovery by way of workers' compensation, the fireman's rule was applicable. *Id.* The court did not discuss precisely what duties are performed by members of "emergency rescue squads" under New Jersey law, nor did the court discuss what, if any, distinction might exist between those having specific rescue, firefighting and law enforcement duties, and those engaged in occupations peripherally involving danger.

In *Kowalski v. Gratopp,* 177 Mich.App. 448, 442 N.W.2d 682 (1989), the plaintiff was an advanced paramedic who worked for a private ambulance service under contract with a city. *Kowalski,* 442 N.W.2d at 683. Responding to a call from the city's

fire department, the plaintiff went to premises owned by the defendant for the purpose of picking up a non-emergency patient. *Id.* Plaintiff fell on an accumulation of ice on the walkway of the premises. *Id.* The court first noted that the fireman's rule was only applicable to public employees. *Id.* However, the court went on to say that even if the plaintiff were viewed as a public employee, the fireman's rule would not preclude the cause of action. The court noted the fundamental difference between public safety personnel and other occupations peripherally involving danger. "Paramedics are employed and paid to treat injuries or illnesses which may arise out of dangerous situations. The paramedic's occupation is one which may peripherally involve hazards, but they are not employed, trained, or paid specifically to confront those hazards." *Kowalski*, 442 N.W.2d at 684. The fireman's rule was not applicable.

Policemen and firemen have exceptional responsibilities. At the scene of an emergency they are covered by a panoply of legal powers and duties necessary to control the people and place where rescue is required. They are expected to act with daring and dispatch to protect life and property. Other public servants may be sent to the scene to perform duties tangent to the emergency. But the official whose *primary* public duty is to confront danger is the fireman or policeman.

Krause was an ambulance attendant whose duties involved rendering first aid and transporting patients by ambulance. Those duties are performed after the imminent peril of fire, crime or disaster has passed. Nothing about those responsibilities imposes a duty to rescue. Unlike firemen and policemen, ambulance attendants are not clothed with either the duty or the authority to control traffic, effect arrests, fight fires or enter collapsing buildings to save lives. As § 190.100(3) makes clear, society does not expect ambulance attendants to throw themselves in harm's way. The public policy and assumption of risk arguments evaporate when applied to persons having no express or implied public duty to confront and eliminate perils created by an uncircumspect citizen. Ambulance attendants are only peripherally involved in such hazards.

 Accordingly, we decline to extend the fireman's rule to an ambulance attendant on the scene of an emergency who undertakes a rescue of persons endangered by the negligence of another. The judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.

All concur.