Thomas J. PINTER, Plaintiff-Appellant,

EMPLOYERS INS. OF WAUSAU, a Mutual Co., Plaintiff,

v.

AMERICAN FAMILY MUTUAL INS. CO., Stephen Jesmok,
Heritage Mutual Ins. Co. and Herbert O. Otto,
Defendants-Respondents.

Supreme Court

*No. 99–0869. Oral argument May 4, 2000.—Decided June 30,
2000.*

(On certification from the court of appeals.)

## 2000 WI 75

(Also reported in 613 N.W.2d 110.)

For the plaintiff-appellant there were briefs by *Patricia A. Schober* and *Schober, Bostetter & Heiden, S.C.*, Brookfield, and oral argument by *Patricia A. Schober*.

For the defendants-respondents there was a brief by *Arthur P. Simpson* and *Simpson & Deardorff, S.C.*, Milwaukee, and oral argument by *Arthur P. Simpson*.

An amicus curiae brief was filed by *Frank T. Crivello, II*, and *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.*, Milwaukee, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. JON P. WILCOX, J. Thomas Pinter appeals from the grant of summary judgment against his negligence action. Pinter is a firefighter and EMT who sustained injuries while providing emergency medical assistance to a passenger who was injured in an automobile accident. Pinter sued the drivers of the cars that were involved in the accident, arguing that his injuries were the direct and proximate result of the drivers' negligence.

¶ 2. The drivers moved for summary judgment. The Circuit Court for Waukesha County, Patrick L. Snyder, Judge, granted the drivers' summary judgment motions because the court concluded that a public policy limitation on liability, commonly termed the "firefighter's rule," bars Pinter from pursuing a negligence action against the drivers.

¶ 3. Pinter appealed. The court of appeals certified the appeal to this court to decide the following question:

> Does the firefighter's rule, as adopted in *Hass v. Chicago & North Western Railway*, 48 Wis. 2d 321, 179 N.W.2d 885 (1970), bar an emergency medical technician (EMT) from pursuing a cause of action against a negligent driver for injuries sustained while rendering aid to the victim of an automobile accident?

We answer this question in the affirmative. We therefore affirm the judgment of the circuit court.

## FACTS

¶ 4. Because this case arises on a motion for summary judgment we accept the facts pleaded by the plaintiff as true. *Sawyer v. Midelfort*, 227 Wis. 2d 124,

136, 595 N.W.2d 423 (1999). The facts alleged by Pinter are as follows.

¶ 5. On February 27, 1997, Stephen Jesmok and Herbert Otto negligently caused an automobile collision in Brookfield, Waukesha County. The collision resulted in injury to a woman who was a passenger in Jesmok's vehicle.

¶ 6. Pinter is a firefighter and EMT for the city of Brookfield whose job requires him to provide emergency care and treatment to victims of automobile accidents in the Brookfield vicinity. Pinter has special training and extensive experience in extricating injured individuals from automobiles.

¶ 7. Pinter was called to the scene of the collision caused by Jesmok and Otto on February 27, 1997. He responded to the emergency in his capacity as an EMT, to provide emergency medical assistance to the injured passenger.

¶ 8. The passenger appeared to be suffering from a spinal cord injury. To assist in safely extricating the passenger from the vehicle, Pinter was required to maintain traction on the passenger's head, neck, and back. To do so, Pinter had to assume an awkward position for a period of time. As a result of maintaining this awkward position, Pinter sustained an inguinal hernia, a serious and permanent injury that required surgical repair.

## PROCEDURAL HISTORY

¶ 9. On July 29, 1998, Pinter filed a complaint against Jesmok, Otto, and their insurers claiming that his injuries were a direct and proximate result of Jesmok and Otto's negligence. In his action against the drivers, Pinter seeks compensatory damages for severe and permanent injuries; pain, suffering, and disability;

medical bills; and loss of earning capacity. The worker's compensation carrier who compensated Pinter for his injuries is a subrogated plaintiff in Pinter's complaint.

¶ 10. The defendants filed motions for summary judgment arguing that Pinter's action against the negligent drivers was barred by *Hass* and by public policy considerations.[1] *Hass* holds that "one who negligently starts a fire is not liable for that negligence when it causes injury to a firefighter who comes to extinguish the blaze." *Hass*, 48 Wis. 2d at 327.

¶ 11. The circuit court concluded that the reasoning of *Hass* applied equally to Pinter's cause of action. The court indicated that if Pinter's claims against the drivers were based at least in part on separate acts of negligence (that is, negligence besides the negligent driving that caused the collision) then the claims could proceed. However, Pinter conceded that his claims were based solely on the negligent driving that caused the collision. The court therefore dismissed Pinter's claims with prejudice.

## STANDARD OF REVIEW

¶ 12. Pinter appeals from the circuit court's grant of summary judgment to the defendants-respondents. We review a grant of summary judgment independently, using the same method as the circuit

---

[1] The defendants Stephen Jesmok and American Family Mutual Insurance Co. did not file a separate brief in support of their motion for summary judgment but joined in the arguments set forth in the brief submitted by defendants-respondents Herbert Otto and Heritage Mutual Insurance Co. The defendants-respondents have also aligned their positions in this appeal.

court. *Sawyer*, 227 Wis. 2d at 135. Summary judgment will be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 136 (quoting *Schuster v. Altenberg*, 144 Wis. 2d 223, 424 N.W.2d 159 (1988)).

¶ 13. Summary judgment was granted in this case in reliance on *Hass*, which establishes a public policy limitation on liability. Whether public policy considerations preclude a particular cause of action is a question of law, to be determined solely by the court. *Hass*, 48 Wis. 2d at 326. Although it is often better to examine such public policy considerations after the facts have been resolved by trial, there are cases in which the public policy question is fully presented by the pleadings. *Id.* at 326–27. This is such a case.

## ANALYSIS

¶ 14. Most jurisdictions in the United States limit liability in negligence cases under a theory of law commonly termed the "firefighter's rule."[2] As applied to firefighters, the rule limits a firefighter's ability to recover damages for injuries sustained while performing his or her duties as a firefighter. In many jurisdictions this rule was originally based on the reasoning that a firefighter who enters premises to fight a fire is a licensee to whom the owner or occupier of the premises owes no duty except to refrain from willful or wanton injury.[3] As the categories of "invitee" and

[2] *See generally*, Larry D. Scheafer, Annotation, *Liability of Owner or Occupant of Premises to Firefighter Coming Thereon in Discharge of His Duty*, 11 A.L.R.4th 597 (1982 and Supp. 1999).

[3] *Hopkins v. Medeiros*, 724 N.E.2d 336, 341 (Mass. App. Ct. 2000); Larry D. Scheafer, Annotation, *Liability of Owner or*

"licensee" gradually have been abolished in tort law,[4] some courts turned to the doctrine of assumption of risk to support the rule.[5] These courts reasoned that " 'one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby.' " *Thomas v. Pang*, 811 P.2d 821, 824 (Haw. 1991)(quoting *Walters v. Sloan*, 571 P.2d 609, 612 (Cal. 1977), *abrogated in part by Neighbarger v. Irwin Indus., Inc.*, 882 P.2d 347 (Cal. 1994) *and superseded in part by statute in* Cal. Civil Code § 1714.9 (West 1999)).

¶ 15. More recently, most courts adopting or adhering to the firefighter's rule have justified the rule on public policy grounds. *Thomas*, 811 P.2d at 824. Thirty years ago, public policy led this court to recognize a limitation on liability in a firefighter's negligence action in *Hass. Hass*, 48 Wis. 2d at 326–27.

¶ 16. In Wisconsin, even when negligent conduct was a substantial factor in causing an injury, public

*Occupant of Premises to Firefighter Coming Thereon in Discharge of His Duty*, 11 A.L.R.4th 597 at § 2 (1982 and Supp. 1999).

[4] *See, e.g., Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 236 N.W.2d 1 (1975)(abolishing the special immunities applied to licensees and invitees in negligence cases and discussing the general trend toward abolition of distinctions between licensees, invitees, and trespassers). *See also* Larry D. Scheafer, Annotation, *Liability of Owner or Occupant of Premises to Firefighter Coming Thereon in Discharge of His Duty*, 11 A.L.R.4th 597 at § 2 n.4 (1982 and Supp. 1999).

[5] *See Thomas v. Pang*, 811 P.2d 821, 824 (Haw. 1991)(citing cases that premised the rule on the assumption of risk principle); *Wright v. Coleman*, 148 Wis. 2d 897, 904, 436 N.W.2d 864 (1989)(noting that in some jurisdictions the firefighter's rule is based on a theory of assumption of risk).

policy considerations may preclude the injured party from pursuing a cause of action. *Hass*, 48 Wis. 2d at 326. Recovery may be denied when:

> "[T]he injury is too remote from the negligence or too 'wholly out of proportion to the culpability of the negligent tort-feasor,' or in retrospect it appears too highly extraordinary that the negligence should have brought about the harm, or because allowance of recovery would place too unreasonable a burden upon users of the highway, or be too likely to open the way to fraudulent claims, or would 'enter a field that has no sensible or just stopping point.' "

*Id.* (quoting *Colla v. Mandella*, 1 Wis. 2d 594, 599, 85 N.W.2d 345 (1957)). *Hass* concluded that these public policy considerations precluded a firefighter's negligence action for injuries sustained while fighting a fire. *Hass*, 48 Wis. 2d at 322–23.

¶ 17. The firefighter in *Hass* was injured in a fire that was caused by a railroad company's negligence. *Id.* at 326. The *Hass* court acknowledged that starting a fire under the alleged circumstances was negligent, and that such negligence was a "substantial factor" in causing the plaintiff's injuries. *Id.* at 326.

¶ 18. Nonetheless, the court barred recovery. The court observed that nearly all fires are caused by negligence. *Id.* at 327. The court therefore determined that requiring a person who negligently starts a fire to pay damages to a firefighter would place too great a burden on owners and occupiers of real estate. *Id.* In addition, liability would " 'enter a field that has no sensible or just stopping point.' " *Id.* The court held that because of these public policy considerations, "one who negligently starts a fire is not liable for that negligence

when it causes injury to a firefighter who comes to extinguish the blaze." *Id.*

¶ 19. Pinter argues that the rule in *Hass* does not apply to his case because *Hass* only bars recovery for negligence in "starting a fire and failing to curtail its spread." *See id.* Pinter emphasizes that all of this court's subsequent cases examining *Hass* have distinguished *Hass* and have permitted recovery. Pinter urges this court to hold that *Hass* is limited to its literal terms.

¶ 20. Pinter is correct in his assertion that thus far *Hass* has not been extended beyond its own facts.

¶ 21. The first case that re-examined the rule in *Hass* was *Clark v. Corby*, 75 Wis. 2d 292, 249 N.W.2d 567 (1977). *Clark* involved a fire that started in a residence when the owner's son drained cans of gasoline into a basement sewer. *Id.* at 293. The homeowners had built a bedroom in the basement without obtaining a building permit, and the bedroom did not conform to applicable housing codes. *Id.* at 294. The basement contained various particularly flammable items, such as carpeting, pillows, paneling, tile, bedding, and paint thinner, the combination of which caused a particularly hot fire with thick black smoke. *Id.* A firefighter who was injured while attempting to fight the fire sued on three grounds: (1) negligence in starting a fire, (2) negligence in failing to warn about the special, hidden hazards in the basement, and (3) negligence in violating the housing code. *Id.* at 295.

¶ 22. This court held that the firefighter's first cause of action, based on negligent starting of the fire, was barred by *Hass. Id.* at 296. However, the cause of action based on negligent failure to warn about hidden, special dangers could proceed to trial. *Id.* at 298. In addition, the cause of action based on violation of a

147

housing ordinance could proceed, provided that the plaintiff was able to establish that the ordinance was enacted to protect a firefighter in the performance of his or her duties. *Id.* at 299–300.

¶ 23. Thus, although the court in *Clark* affirmed the basic public policy analysis in *Hass*, it determined that a firefighter may pursue a cause of action based on additional acts of negligence, other than the initial negligence that caused the fire.

¶ 24. The next case in which this court considered the rule in *Hass* was *Wright v. Coleman*, 148 Wis. 2d 897, 904, 436 N.W.2d 864 (1989). In that case, a firefighter was injured when he slipped and fell on the defendant's icy driveway while attempting to bring a hose to the garage to fight a fire. *Id.* at 900. The trial court allowed the claim to proceed to trial. *Id.* The plaintiff produced evidence establishing that there was no ice anywhere else in the city on that evening and that the defendant's son had created the icy patch on the driveway by using a garden hose to wash his car. *Id.* Relying on *Clark*, the trial court instructed the jury that the firefighter's action could not succeed unless the homeowner had failed to warn the firefighter of a "hidden hazard." *Id.* at 901.

¶ 25. This court concluded that the trial court's instruction was erroneous. *Id.* at 902. The court stated that *Clark* was not "a special rule applicable only for hazards that were 'hidden' but a case of inapplicability of the policy immunity recognized in *Hass*. . . ." *Id.* at 905. The court described *Hass* as an exception to the general principles of negligence, *id.* at 907, and observed, "[i]t is only in the unusual or very clear case that a court can conclude, as we did in *Hass*, that, despite negligent conduct, as a matter of law, *i.e.,*

under appropriate policy, there shall be no recovery." *Id.* at 908. The court then determined that liability might exist in the case if under the circumstances a reasonable person would have warned the firefighter about the ice. *Id.* at 909.

■■

¶ 26. *Wright,* like *Clark,* clarified that *Hass* only precludes a negligence action when it is based on the initial act of negligence that caused the fire and necessitated rescue.

¶ 27. The last case in which this court examined the public policy analysis in *Hass* was *Hauboldt v. Union Carbide Corp.*, 160 Wis. 2d 662, 467 N.W.2d 508 (1991). The fire in that case was caused by a woodburning furnace in a garage. *Id.* at 668. The furnace started a fire that ignited spilled gasoline and eventually caused other containers of flammable substances in the garage to burn and explode. *Id.* at 668.

¶ 28. A firefighter who responded to the emergency and was attempting to extinguish the blaze was seriously injured when an acetylene tank exploded. *Id.* The firefighter sued the manufacturer of the acetylene tank, arguing that the tank was negligently manufactured and was inherently dangerous. *Id.* at 669. The manufacturer claimed that liability was barred by the firefighter's rule. *Id.* at 666–67.

■■

¶ 29. This court held that the rule in *Hass* did not extend to causes of action against "manufacturers whose defective product directly causes the injury to firefighters during the course of a fire, when the danger caused by the defective product is not reasonably apparent to them, or a risk anticipated by them." *Id.* at 673. The court reasoned that none of the public policy considerations served by the rule would be fulfilled by

extending the rule to manufacturers under such circumstances. *Id.* at 675.

¶ 30. *Hauboldt* follows the same reasoning as *Clark* and *Wright*; the public policy considerations that barred the cause of action in *Hass* do not bar a cause of action that is based on an independent act of negligence.

¶ 31. This series of cases shows that the public policy limitation in *Hass* is so limited that it applies in few cases. It bars a cause of action only when the sole negligent act is the same negligent act that necessitated rescue and therefore brought the firefighter to the scene of the emergency. If the cause of action is based on any other negligent act (such as negligent failure to warn, negligent violation of an ordinance designed to protect the injured party, or negligent manufacture of a dangerous product), public policy does not bar recovery.[6] Based on this precedent, we agree with Pinter that the rule in *Hass* is a narrow limitation on liability.

---

[6] In this respect the public policy limitation recognized in *Hass* is different from the "firefighter's rule" recognized in some jurisdictions, which precludes recovery even when secondary and aggravating acts of negligence are involved. *See, e.g., Young v. Sherwin-Williams Co.*, 569 A.2d 1173, 1178–79 (D.C. 1990) (declining to recognize an exception to the firefighter's rule for willful, wanton acts); *Kreski v. Modern Wholesale Elec. Supply Co.*, 415 N.W.2d 178, 189–90 (Mich. 1987)(stating that the firefighter's rule "insulates a defendant from liability for injuries arising out of the inherent dangers of the profession" of a safety officer and determining that "inherent dangers" include "alleged negligence relating to the condition of the premises"). *See also Rennenger v. Pacesetter Co.*, 558 N.W.2d 419, 422 (Iowa 1997)(commenting that Wisconsin follows a very limited firefighter's rule).

¶ 32. However, we do not agree with Pinter that *Hass* should be limited to its literal terms. *Hass* is not an artificial, technical rule that applies only to firefighters. It is an application of the standard public policy analysis that applies to all tort cases in Wisconsin. The circuit court recognized this:

> I can't distinguish the facts of this case from the *Hass* case. This is not an extension of the theory because a man is an EMT. This is the same rule applying in the same circumstances as what has been commonly called the fireman's rule. And I think it could be named other things, and I think it applies to anyone in a similar capacity. . . .

> Absent some act that can be considered negligence in itself, the mere fact there was negligence causing the accident cannot give rise to collection for or liability on the part of these defendants towards Mr. Pinter. . . .

¶ 33. The real issue in this case is whether the public policy analysis in *Hass* is still valid, and if so, whether it logically extends to Pinter's negligence action.

¶ 34. We first consider whether the public policy analysis in *Hass* is still valid. Pinter does not explicitly ask this court to overturn *Hass*. However, Pinter and the *amicus curiae* point out that some jurisdictions have recently abolished the "firefighter's rule" by judi-

cial decision or by statute.[7] They also note that the rule has been the subject of criticism and dissent.[8]

¶ 35. The concerns that have led other jurisdictions to abandon or reject the so-called "firefighter's rule" do not persuade us that the public policy analysis in *Hass* should be rejected. Many jurisdictions that have criticized or rejected their version of the "firefighter's rule" have noted that the licensee/invitee distinction that was the original basis for the rule has fallen out of the law. *See* David L. Strauss, Comment, *Where There's Smoke There's the Firefighter's Rule: Containing the Conflagration After One Hundred Years*, 1992 Wis. L. Rev. 2031, 2034–35; *Wills v. Bath Excavating and Constr. Co.*, 829 P.2d 405, 408–09 (Colo. Ct. App. 1991); *Hopkins v. Medeiros*, 724 N.E.2d 336, 341 (Mass. App. Ct. 2000); *Christensen v. Murphy,*

---

[7] *See Wills v. Bath Excavating and Constr. Co.*, 829 P.2d 405, 408–09 (Colo. Ct. App. 1991)(concluding that the Colorado Supreme Court has abandoned the firefighter's rule); *Hopkins v. Medeiros*, 724 N.E.2d 336, 343 (Mass. App. Ct. 2000) (concluding that the firefighter's rule has no continuing vitality in Massachusetts); *Christensen v. Murphy*, 678 P.2d 1210 (Or. 1984)(rejecting the firefighter's rule). *See also* Fla. Stat. ch. 112.182 (1999)(abolishing the firefighter's rule); Minn. Stat. § 604.06 (1999)(same).

[8] *See, e.g., Edwards v. Honeywell, Inc.*, 50 F.3d 484, 491–92 (7th Cir. 1995); *Waggoner v. Troutman Oil Co.*, 894 S.W.2d 913, 916–19 (Ark. 1995)(Roaf, J., dissenting); *Walters v. Sloan*, 571 P.2d 609, 614–20 (Cal. 1977)(Tobriner, Acting C.J., dissenting), *abrogated in part by Neighbarger v. Irwin Indus., Inc.*, 882 P.2d 347 (Cal. 1994) *and superseded in part by statute in* Cal. Civil Code § 1714.9 (West 1999); *Thomas v. Pang*, 811 P.2d 821, 826–28 (Haw. 1991) (Padgett, J., dissenting); David L. Strauss, *Where There's Smoke, There's the Firefighter's Rule: Containing the Conflagration After One Hundred Years*, 1992 Wis. L. Rev. 2031, 2059–2062.

678 P.2d 1210, 1214 (Or. 1984). However, this distinction was never the basis of the public policy analysis in *Hass. See Hass*, 48 Wis. 2d at 325.

¶ 36. Similarly, jurisdictions that relied on the assumption of risk doctrine to justify the "firefighter's rule" have abandoned the rule under comparative negligence principles. *See Wills*, 829 P.2d at 409 (concluding that the firefighter's rule has been abandoned); *Christensen*, 678 P.2d at 1216–18 (abandoning the firefighter's rule). *See also Thomas*, 811 P.2d at 824–25 (noting that the widespread abolition of contributory negligence as a total bar to recovery has caused courts to question the firefighter's rule). However, *Hass* was never premised on the idea that a firefighter's assumption of the risks inherent in his or her profession makes the firefighter's negligence greater than the alleged tortfeasor's as a matter of law. Instead, *Hass* was based squarely on Wisconsin's traditional public policy analysis in negligence cases.[9]

¶ 37. The most recent jurisdiction to reject the "firefighter's rule" did so on the grounds that the rule was in conflict with a state statute that specifically granted a right to file suit. *Hopkins*, 724 N.E.2d at 343.

---

[9] We reject Pinter's argument that the rescue doctrine stated in *Cords v. Anderson*, 80 Wis. 2d 525, 546–47, 259 N.W.2d 672 (1977) authorizes recovery in his case. The rescue doctrine in *Cords* absolves a rescuer of responsibility for his or her own contributory negligence, under the theory that the sight of another person in danger prompts rescue, even if attempting the rescue is obviously dangerous. *Id.* at 546. The defendants-respondents do not argue that Pinter's contributory negligence outweighs their negligence as a matter of law. Instead, they argue that the public policy reasoning in *Hass* applies equally to Pinter's cause of action and bars liability. *Cords* did not overrule the public policy reasoning in *Hass*.

No such statute exists in Wisconsin. In the thirty years since *Hass*, the Wisconsin Legislature has done nothing to modify or abolish the public policy limitation established in *Hass*.

¶ 38. We are convinced that the public policy analysis in *Hass* remains sound. It is still true that nearly all fires are caused by negligence. *See Hass*, 48 Wis. 2d at 327. It is therefore still true that permitting firefighters to pursue negligence actions based on the negligent act of starting a fire would place an unreasonable burden on the owners and occupiers of premises and would enter a field with no sensible or just stopping point. *See id.*

¶ 39. Fundamentally, the rule recognized in *Hass* is an expression of public policy because it prohibits a firefighter from " 'complaining about the negligence that creates the very need for his or her employment.' " *Hauboldt*, 160 Wis. 2d at 676 (quoting *Mignone v. Fieldcrest Mills*, 556 A.2d 35, 39 (R.I. 1989)). As stated by the Supreme Court of Hawaii:

> The very purpose of the fire fighting profession is to confront danger. Fire fighters are hired, trained, and compensated to deal with dangerous situations that are often caused by negligent conduct or acts. "[I]t offends public policy to say that a citizen invites private liability merely because he happens to create a need for those public services."

*Thomas*, 811 P.2d at 825. Permitting firefighters to pursue actions like the one in *Hass* is therefore not consistent with the relationship of the fire fighting profession to the public. *See id.* It would contravene public policy to permit a firefighter to recover damages from

an individual who has already been taxed to provide compensation to injured firefighters. *Hauboldt*, 160 Wis. 2d at 677 (citing *Mignone*, 556 A.2d at 39).

¶ 40. In sum, we reaffirm the public policy reasoning set forth in *Hass*. The limitation stated in *Hass* has been the law of Wisconsin for thirty years, and it is still good law.

¶ 41. The remaining question is whether the public policy reasoning in *Hass* logically extends to Pinter's cause of action. Pinter argues that *Hass*'s reasoning does not logically extend to his case because of two differences between his case and *Hass*: (1) Pinter is an EMT rather than a firefighter, and (2) Pinter's cause of action is based on negligent driving rather than the negligent starting of a fire.

¶ 42. First, Pinter and the *amicus curiae* both contend that EMTs are readily distinguishable from firefighters, and that the public policy considerations that bar firefighters from recovery should not bar EMTs from recovery under analogous circumstances. They point to other jurisdictions that have declined to extend the "firefighter's rule" to emergency medical personnel like EMTs.[10] These courts have reasoned

[10] *See Heck v. Robey*, 659 N.E.2d 498, 505 (Ind. 1995) (paramedic); *Kowalski v. Gratopp*, 442 N.W.2d 682 (Mich. Ct. App. 1989)(paramedic); *Krause v. U.S. Truck Co.*, 787 S.W.2d 708 (Mo. 1990)(ambulance attendant); *Lees v. Lobosco*, 625 A.2d 573 (N.J. Super. Ct. App. Div. 1993)(EMT).

It is interesting to note that each of these cases would have been able to proceed in Wisconsin regardless of the firefighter's rule, because they all involved injuries that were caused by independent acts of negligence. *Heck*, 659 N.E.2d at 500 (the driver being rescued "flailed and kicked in a combative manner during the rescue"); *Kowalski*, 442 N.W.2d at 683 (while on his way to pick up a patient, the paramedic slipped and fell on an

that unlike firefighters, who are specially employed and trained to confront danger, emergency medical personnel are not specially trained or employed to deal with dangerous situations. *See Kowalski v. Gratopp*, 442 N.W.2d 682, 684 (Mich. Ct. App. 1989)(paramedic) ("The paramedic's occupation is one which may peripherally involve hazards, but they are not employed, trained, or paid specifically to confront those hazards."); *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 713 (Mo. 1990)(ambulance attendant) ("[S]ociety does not expect ambulance attendants to throw themselves in harm's way."); *Lees v. Lobosco*, 625 A.2d 573, 576 (N.J. Super. Ct. App. Div. 1993)(EMT) (quoting *Krause* and citing *Kowalski*).

¶ 43. This reasoning does not persuade us that the public policy limitation in *Hass* should not extend to Pinter's claim. Firefighting and emergency medical assistance are closely related professions; like Pinter, some EMTs also serve as firefighters. Members of both professions have special training and experience that prepare them to provide assistance under dangerous emergency conditions. Persons entering either profession know that they will be expected to provide aid and protection to others in these hazardous circumstances. In short, both EMTs and firefighters are professional rescuers who are specially trained and employed to conduct rescue operations in dangerous emergencies. *See Maltman v. Sauer*, 530 P.2d 254, 257 (Wash. 1975)(holding that a professional rescuer may not recover damages for an injury that is "the result of a

icy walkway); *Krause*, 787 S.W.2d at 710 (after arriving at the scene of a multi-vehicle accident, the ambulance attendant was struck by another vehicle); *Lees*, 625 A.2d at 574 (same). *Clark*, *Wright*, and *Hauboldt* make clear that Wisconsin's version of the firefighter's rule does not extend to such claims.

hazard generally recognized as being within the scope of dangers identified with the particular rescue operation").

¶ 44. The facts of Pinter's case illustrate this point. Pinter had helped to extricate injured individuals from automobiles on over two hundred occasions. Pinter's injury occurred because he was required to maintain an awkward position for an extended period of time to avoid aggravating the passenger's spinal injuries. Thus, because of his position as a specially trained, experienced EMT, Pinter was asked to put himself in harm's way for the protection of another, more seriously endangered individual. We conclude that EMTs, like firefighters, are specially employed and trained to confront danger.

¶ 45. Pinter's second effort to distinguish his case from *Hass* focuses on the fact that Pinter's cause of action is based on negligent driving and not on the negligent starting of a fire.

¶ 46. We are not persuaded. Like fires, nearly all automobile accidents are the result of negligence. Pinter suggests that the possibility that the negligent drivers violated the motor vehicle code provides a separate basis for recovery. However, "the protection of a safety statute or ordinance is extended only to those whom the enactment was intended to protect." *Clark*, 75 Wis. 2d at 299. Unlike the municipal housing code provisions at issue in *Clark*, motor vehicle code provisions are not arguably designed to protect rescuers in the performance of their duties. *See Clark*, 75 Wis. 2d at 300. We conclude that an automobile collision is equivalent to a fire under the public policy analysis in *Hass*.

¶ 47. In sum, we can find no logical reason that the public policy analysis set forth in *Hass* should not extend to Pinter's cause of action. Instead, we conclude that public policy bars Pinter's recovery. In the same way that allowing a firefighter to recover in *Hass* would have placed an unreasonable burden on the railroad company that negligently caused the fire, permitting an EMT to recover under the circumstances alleged by Pinter would place an unreasonable burden on drivers who negligently cause collisions. *See Hass*, 48 Wis. 2d at 327. The injury that Pinter sustained is simply too remote from the initial acts of negligence that caused the collision. Permitting Pinter's action to proceed would enter a field with no sensible or just stopping point.

¶ 48. *Hass* would not bar Pinter's cause of action if Pinter sought recovery on the basis of some act or omission other than the initial negligence that necessitated emergency medical assistance. However, Pinter concedes no secondary or aggravating negligence supports recovery.[11] We therefore conclude that public policy bars Pinter's cause of action.

¶ 49. Pinter argues that extending the public policy limitation in *Hass* to an EMT claim will result in "a flood of challenges to traditional negligence claims whenever a public employee is injured." (Appellant's Brief at 22.)

¶ 50. Our holding should have no such effect. We do not broaden the underlying public policy analysis in *Hass*, which has been the law in Wisconsin for thirty years. We merely hold that when an EMT is called to

---

[11] We have already rejected Pinter's suggestion that violation of the motor vehicle code provides a basis for recovery under the circumstances of his case.

the scene of an automobile collision in his professional capacity, and the EMT sustains an injury while performing his duty to provide emergency care, public policy prohibits the EMT from maintaining a cause of action based on the negligent driving that caused the collision. We emphasize that our public policy analysis is based on the fact that the only negligence Pinter complains of is the same negligence that caused the initial emergency and resulted in rescue personnel being called to the scene. Under these limited circumstances, public policy bars Pinter's cause of action.

¶ 51. In conclusion, we answer the certified question in the affirmative: the firefighter's rule, as adopted in *Hass*, 48 Wis. 2d 321, bars an emergency medical technician (EMT) from pursuing a cause of action against a negligent driver for injuries sustained while rendering aid to the victim of an automobile accident. However, we emphasize that in Wisconsin the so-called "firefighter's rule" in *Hass* is merely one application of the standard public policy analysis that applies to all negligence claims.

¶ 52. Accordingly, we affirm the judgment of the circuit court.

*By the Court.*—The judgment of the circuit court is affirmed.

¶ 53. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. The majority opinion attempts to fit this case within the public policy considerations for denying liability for negligent conduct, which are the grounds used to explain the firefighter rule in Wisconsin.[1] The public policy applied in the firefighter

---

[1] The firefighter rule in other states developed from the doctrine of assumption of risk and the law of premises liability.

case was that imposing liability would place "too great a burden on homeowners, and other occupiers of real estate. . .[and] would permit the law of negligence to enter a field that has no sensible or just stopping point" (citation omitted). *Hass v. Chicago N.W. Ry.*, 48 Wis. 2d 321, 327, 179 N.W.2d 885 (1970).

¶ 54. The majority opinion simply concludes, without explanation or justification, that permitting the EMT in this case to recover damages places an unreasonable burden on drivers who negligently cause collisions; that the EMT's injury is simply too remote from the initial acts of negligence that caused the collision; and that permitting the action to proceed would enter a field with no sensible or just stopping point. Majority op. at ¶ 47. I am not persuaded. Negligence law imposes liability on negligent drivers for greater burdens and more remote injuries than would be imposed for injury to the EMT. The usual rules applicable to negligence actions suffice to address the majority's concerns.

¶ 55. The majority opinion applies the public policy doctrine underlying the firefighter rule to firefighters and EMTs because "[m]embers of both professions have special training and experience that prepare them to provide assistance under dangerous emergency conditions." Majority op. at ¶ 43. The rule the majority opinion adopts seems to apply to a host of paid employees and volunteers, both in public and private service. Are doctors or nurses who work in emergency rooms or in ambulances barred from recov-

Some states have relied on different public policy considerations than those relied on in Wisconsin cases. *See* Joseph B. Conder, Annotation, *Application of "Fireman Rule" to Bar Recovery by Emergency Medical Personnel Injured in Responding to, or at Scene of, Emergency*, 89 A.L.R.4th 1079, § 2(a) (1991).

160

ery for injuries caused by the negligence of a tortfeasor? Are teachers who assist children under dangerous emergency conditions barred from recovery for injuries caused by a negligent pupil? Are private-sector safety supervisors trained in emergency responses to toxic spills or petroleum fire-fighting barred from recovery for injuries caused by a negligent tortfeasor?[2]

¶ 56. The number of factual scenarios to which the majority's reasoning can be applied is troubling. The holding in this case is contrary to the general rule that cases in which a causally negligent tortfeasor is relieved of liability are infrequent and present unusual and extreme considerations.[3] I do not think that the law of negligence or that public policy considerations favor holding that a tortfeasor has complete immunity from liability based on the plaintiff's occupation.

¶ 57. For the reasons stated, I dissent.

¶ 58. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

[2] *See Neighbarger v. Irwin Indus., Inc.*, 882 P.2d 347, 350 (Cal. 1994) (distinguishing firefighters and police officers and holding that the firefighter rule did not apply to private safety employees).

[3] *See Schlomer v. Perina*, 169 Wis. 2d 247, 253, 485 N.W.2d 399 (1992); *Stewart v. Wulf*, 85 Wis. 2d 461, 479, 271 N.W.2d 79 (1978).